***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is May 15, 2001.
2. On May 15, 2001, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On May 15, 2001, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
4. On May 15, 2001, defendant-employer employed three or more employees.
5. Defendant-employer is insured by Republic Franklin.
6. Plaintiff's average weekly wage is to be determined by a Form 22 submitted by defendants.
7. The parties stipulated into evidence a packet of plaintiff's medical records.
8. The parties stipulated into evidence defendants' answers to plaintiff's First Set of Interrogatories and Request for Production of Documents.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 56-year-old male with an eighth-grade education. Plaintiff became employed with defendant-employer in 1997, driving a truck delivering produce to restaurants in the Greensboro Winston-Salem High Point area. As a part of delivering freight, plaintiff was required to move and lift items weighing up to 50 pounds.
2. In 1998, plaintiff injured his back and neck. Plaintiff was treated by Dr. Joseph Stern for these injuries. Plaintiff had pre-existing conditions including chronic back pain, hepatitis, heart valve problems due to rheumatic fever in childhood and Coumadin blood thinner treatment.
3. In spite of plaintiff's preexisting conditions, plaintiff worked for defendant-employer performing his regular duties from 1998 until May 16, 2001. Plaintiff frequently worked ten or more hours a day driving and delivering produce and performed medium to heavy work including driving and lifting and moving produce.
4. On May 15, 2001, plaintiff was driving a truck in Winston-Salem and making a delivery to Arbys. Between 6:00 and 6:30 p.m., plaintiff was lifting a carton of potatoes weighing 50 pounds, felt his back pop and dropped the carton. Employees of Arbys moved the carton from the truck to the store, and plaintiff stopped his delivery route. Plaintiff was scheduled to work and make additional deliveries after Arbys, but was unable to do so. During the shift, he reported the lifting incident to a dispatcher identified as Bud.
5. During the night and the following morning, plaintiff's pain worsened. He reported to work after 4:00 a.m. on May 16, 2001 to make deliveries. Plaintiff advised his employer that he was unable to drive or deliver from his truck that day, but defendant-employer requested that he assist another employee in making his rounds as a passenger. By 11:00 a.m., plaintiff was no longer able to walk or move and his pain was so severe that he sought treatment at the Moses Cone Hospital emergency room.
6. Plaintiff properly reported his symptoms and advised defendant-employer he was leaving work.
7. Plaintiff was seen at Moses Cone Hospital with complaints of back pain that had arisen in the month before, but grown significantly worse on May 15, 2001 and May 16, 2001, especially a new symptom in his right hip area. While the medical records do not contain a history of the cause of the back pain, the back pain and the worsening of symptoms were contemporaneous with the trip to the emergency room and were of such a degree that plaintiff could not work the balance of the day. Plaintiff was given Morphine shots, crutches and pain pills. An MRI revealed a free floating fragment of a ruptured disc in his low back. Plaintiff was referred to his original physician, Dr. Stern.
8. When plaintiff reported to work the next day, he discussed being taken out of work with Ray Griffin. Plaintiff was using crutches and was unable to work. Defendant-employer gave plaintiff his paycheck, but failed to file any workers' compensation paperwork. Instead, defendant-employer assisted plaintiff in filing a short-term disability claim. This disability claim and paperwork contained a consistent report by plaintiff and Dr. Stern, that plaintiff experienced disability beginning May 16, 2001, was taken out of work on May 22, 2001 by Dr. Stern and that the injury was suffered "on the job." Plaintiff made these consistent assertions long before he retained counsel.
9. Defendants contend that plaintiff's current disability was caused not by the specific traumatic incident on May 15, 2001, but was pre-existing. In particular, defendants note that as of December 20, 2000, Dr. Stern diagnosed plaintiff with displacement of lumbar intervertebral disc without myelopathy, and that plaintiff was permanently disabled due to this condition. However, plaintiff continued to work for defendant-employer, and was able to execute his duties prior to the specific traumatic incident which occurred on May 15, 2001.
10. On May 16, 2001, plaintiff was seen at the Moses Cone Hospital emergency room. An MRI of the lumbar spine indicated small central protrusion at L3-4 without significant nerve root cutoff or spinal stenosis. Plaintiff returned to Dr. Stern on May 22, 2001. Dr. Stern evaluated the MRI and determined that there was significant stenosis at the L4-5 level and his May 22, 2001 note indicates that plaintiff has recently developed right hip and right lower extremity pain. Dr. Stern indicates that this incident resulted in a "significant exacerbation" of plaintiff's right lower extremity pain.
11. Plaintiff indicated on a questionnaire for Guilford Neurosurgical Associates on May 22, 2001 that he had been injured at work. Further, forms executed by Dr. Stern also indicate that plaintiff felt a pop in his back while at work. This specific traumatic incident resulted in increased pain, and exacerbated plaintiff's right lower extremity pain, rendering plaintiff unable to work.
12. Dr. Stern treated plaintiff conservatively. A fusion would have been desirable, but Dr. Stern was unable to recommend spinal fusion for treatment of plaintiff's back injury due to plaintiff's heart valve replacement, previous stroke and taking of blood thinners. To perform surgery, the Coumadin therapy would have to be withdrawn which would endanger plaintiff's life and seriously increase the probability of a stroke during the course of surgery. Thus, Dr. Stern was of the opinion that plaintiff should remain entirely out of work and was disabled.
13. On May 15, 2001, plaintiff suffered a new injury, which was disabling in nature. The injury prevented him from finishing work on May 15, 2001 and required emergency and follow up treatment on May 16, 2001. Prior to May 15, 2001, plaintiff worked continuously and successfully for the defendant-employer. Plaintiff's back pain prior to May 15, 2001 and May 16, 2001 was not of a disabling nature. Although plaintiff had a history of back pain, the direct and proximate cause of his May 15, 2001 injury was a specific traumatic incident suffered while lifting potatoes.
14. Defendant-employer has terminated plaintiff's employment and assisted in filing disability forms reflecting a job injury in the course of employment. Defendants have failed to file a Form 19 at or near the time of plaintiff's disability.
15. Plaintiff's report of an injury and specific traumatic incident in the course of his employment was timely reported. Records of the employer reflect that other accidents were not reported to the Industrial Commission on a Form 19, as required by law, even though plaintiff lost time and received medical treatment. Consistent with this pattern, the employer discouraged plaintiff from pursuing a workers' compensation claim in May 2001, both by advising plaintiff that he could not bring a workers' compensation claim, by terminating plaintiff's employment and by directing plaintiff into an insured disability plan outside of the workers' compensation system.
16. Plaintiff earned an average weekly wage of $650.74, yielding a compensation rate of $433.84.
17. The denial of this claim was not without justification and due cause, and the reasons for the hearing were not engendered by unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 15, 2001, plaintiff sustained a specific traumatic incident to his back. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury, plaintiff was unable to earn the same or any other wages at the same or any other employment from May 16, 2001 and continuing. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $433.84 for the period from May 16, 2001 and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff earned an average weekly wage of $650.74, yielding a compensation rate of $433.84. N.C. Gen. Stat. § 97-29.
4. The treatment which plaintiff has received for his lower back and leg conditions was necessitated by his compensable May 15, 2001 injury and was reasonably necessary and designed to effect a cure, provide relief and lessen the period of plaintiff's disability. Plaintiff has not yet reached maximum medical improvement. Plaintiff is entitled to have defendants provide medical treatment and, specifically, to have defendants provide treatment to plaintiff by Dr. Stern. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $433.84 per week for the period from May 16, 2001 and continuing until further Order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. All amounts paid subject to this Paragraph shall be subject to an attorney's fee contained in Paragraph 2.
2. A reasonable attorney's fee in the amount of 25% of the compensation due plaintiff under Paragraph 1 is approved for plaintiff's counsel and shall be paid by defendants to plaintiff's counsel directly as follows: 25% of the accrued amount shall be deducted and paid to plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
4. Defendants shall pay the costs, including an expert witness fee which is hereby approved in the amount of $150.00 to Christina Carey Timmons, R.N.
This the ___ day of June, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER